PHILLIP A. TALBERT
United States Attorney
ROBERT C. ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**
Jan 16, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# REDACTED

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>  ███████████<br>RONALDO MUDRANO AYALA,<br>  AKA "OG,"<br>  AKA "EL PROFESSOR,"<br>  AKA "PROFE,"<br>ANGEL ANTHONY ESPARZA,<br>  AKA "SNAPPY,"<br>  AKA "SNAPS,<br>RONALD PAUL SEPULVEDA,<br>  AKA "TEMPER,"<br>SAMUEL O. MORALES,<br>  AKA "PAYASO,"<br>  AKA "PAYA,"<br>ALLEN DAVID FONG,<br>  AKA "FRANK,"<br>  AKA "FRANKIE CHINO," AND<br>ALEXIS RODRIGUEZ,<br>  AKA "MENACE,"<br><br>  Defendants. | CASE NO. 2:23-CR-00271-DC<br><br>18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Influenced Corrupt Organization; 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, Fentanyl, and Heroin; 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine (2 counts); 21 U.S.C. § 841(a)(1) – Distribution of Fentanyl; 21 U.S.C. § 841(a)(1) – Distribution of Heroin; 18 U.S.C. § 1963 and 21 U.S.C. § 853(a) – Criminal Forfeiture |

## S U P E R S E D I N G   I N D I C T M E N T

///

///

SUPERSEDING INDICTMENT

1

COUNT ONE: [18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise]

The Grand Jury charges:

RONALDO MUDRANO AYALA,
ANGEL ANTHONY ESPARZA,
RONALD PAUL SEPULVEDA,
SAMUEL O. MORALES,
ALLEN DAVID FONG, AND
ALEXIS RODRIGUEZ,

defendants herein, as follows:

I.   The Enterprise

1.   At all times relevant to this Superseding Indictment, the defendants were members and associates of an organization known as the Mexican Mafia or La eMe ("La eMe"), whose members and associates engaged in, among other things, interference with commerce through extortion, arson, controlled substance trafficking, and firearms trafficking. At all relevant times, La eMe operated within the Eastern District of California and elsewhere. La eMe, including its leaders, members, and associates, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. La eMe constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of La eMe. La eMe is engaged in, and its activities affected, interstate and foreign commerce.

II.   Background on La eMe

A.   La eMe Formation and Structure

2.   La eMe was founded in Folsom Prison within the State and Eastern District of California. Thereafter, La eMe grew within the California and Federal prison systems, and today, La eMe exerts influence and control over various illegal activities both inside and outside of the California and Federal prison systems. La eMe is affiliated with and derives its membership from street gangs referred to collectively as Sureño street gangs. La eMe exerts control over and organizes Sureño gangs throughout the United States into a larger, La eMe-controlled, criminal organization.

3.   Members of La eMe are referred to as "Brothers" or "Carnales." Trusted associates working on behalf of La eMe who have not yet attained full brotherhood are referred to as La eMe associates or "Camaradas." A La eMe Brother or Carnal, within his geographic area of influence,

oversees criminal activities and issues orders to La eMe associates. La eMe enforces its rules and promotes discipline among its members and associates by assaulting and threatening those individuals, including associates, who violate the rules, fail to carry out an order, or pose a threat to La eMe.

4. Members and associates of La eMe routinely use contraband cell phones smuggled into prisons to communicate with each other. These communication devices allow inmates and individuals acting on the behalf of inmates to send correspondence, transact La eMe business, and transfer funds with La eMe members and associates both inside and outside of the prison systems.

B.  La eMe Taxes

5. La eMe generates revenue from and exerts control over illegal activities through the collection of "La eMe taxes" (hereafter referred to as "taxes"), among other means. La eMe Carnales and Camaradas refer to La eMe taxes as "feria" and "cariño." La eMe requires payment of taxes on any illegal activities which generate revenue within its area of influence, and La eMe requires Sureño street gangs to pay taxes on a regular basis. La eMe taxes serve various functions for the enterprise. Because La eMe's members and associates are incarcerated in various prisons throughout the Federal and State of California Prison systems, individuals or gangs engaged in illegal activity outside of prison will often end up incarcerated in a prison housing La eMe members and associates. La eMe offers protection to individuals and gangs that pay La eMe taxes in the event that the individual or member of the gang is incarcerated at a prison housing La eMe members and associates. Also, to ensure La eMe directives are respected and carried out, a La eMe member can require a person or La eMe associate who failed to carry out an order on behalf of La eMe to pay a tax for that associate's failure to carry out the order. In addition, La eMe collects taxes from entertainers or persons perceived to be profiting by using La eMe's reputation, using insignias associated with La eMe, or claiming La eMe or "mafia" affiliation.

6. If the gang or individual pays the tax, La eMe permits those gangs and individuals to exert influence over criminal activities, to engage in the criminal acts with La eMe protection if incarcerated, and to claim affiliation with La eMe in a public forum. When a gang or individual fails to pay the tax, La eMe will threaten physical violence upon the gang or individual, destroy property belonging to the gang or individual, refuse to protect the individuals who are incarcerated, and threaten to kill individuals who refuse to pay the tax. In addition to taxing criminal activities, La eMe will also

participate directly in criminal activities including, but not limited to, controlled substance trafficking, extortion, firearms trafficking, arson, murder-for-hire, and business arrangements with other criminal organizations such as the Sinaloa Cartel.

### III. Background on the Sinaloa Cartel

7. The Sinaloa Cartel is based in Culiacan, Sinaloa, Mexico. The Sinaloa Cartel operates in Mexico as well as in the United States, including within the Eastern District of California, and elsewhere.

8. The primary purpose of the Sinaloa Cartel is to smuggle large quantities of controlled substances into the United States to distribute them for profit. In doing so, the Sinaloa Cartel secures, maintains, and regulates transportation routes for drugs and drug proceeds between Mexico and the United States.

9. The Sinaloa Cartel uses the proceeds generated by trafficking in controlled substances to fund the Sinaloa Cartel's activities including the acquisition of items and materials related to the daily function of the Sinaloa Cartel. Such items include firearms, ammunition, bullet-proof vests, radios, vehicles, and tactical gear. The Sinaloa Cartel uses these items to protect and patrol areas, properties, and assets under Sinaloa Cartel control.

### IV. Purpose of the Enterprise

10. The purposes of the Le eMe Enterprise include, but are not limited to, the following:

   a. Enriching La eMe members and associates through, among other things, the collection of taxes from controlled substance traffickers, Sureño street gangs, persons in the entertainment industry, and members who fail to carry out tasks on behalf of La eMe;

   b. Controlling the activities of Sureño street gangs;

   c. Preserving, protecting, and expanding the power of La eMe through the use of intimidation, violence, threats of violence, and assaults; and

   d. Forming partnerships with other criminal organizations, such as the Sinaloa Cartel.

### V. The Means and Methods of the Enterprise

11. Among the means and methods by which La eMe's leaders, members, and associates

conduct and participate in the conduct of the affairs of the La eMe criminal enterprise are the following:

    a. The leaders, members, and associates of La eMe commit, attempt, and threaten to commit acts of violence, including murder and assault, to protect and expand the La eMe's criminal operations.

    b. The leaders, members, and associates of La eMe promote a climate of fear through violence and threats of violence.

    c. The leaders and members of La eMe promulgate certain rules to be followed by all participants in the La eMe criminal enterprise including the rule that a participant in the Enterprise not act as an informant to law enforcement authorities regarding the activities of the Enterprise.

    d. The leaders, members, and associates of La eMe, to enforce the rules of La eMe and to promote discipline, attempt to murder, assault and threaten those participants in the Enterprise and others who violate the rules or pose a threat to the Enterprise.

    e. The leaders, members, and associates of La eMe are entitled to conduct, and, in fact, conduct illegal activities to generate income, under the protection of La eMe.

    f. The leaders, members, and associates of La eMe engage in the trafficking of controlled substances to generate income.

    g. The leaders, members, and associates of La eMe collect taxes from Sureño gangs, drug traffickers, and entertainers who purport to live a gangster lifestyle or who claim affiliation with La eMe or the "mafia" to generate income.

    h. The leaders, members and associates offer protection to those individuals and Sureño gang members who regularly pay taxes to the Enterprise in the event that the individuals or Sureño gang members are incarcerated.

    i. The leaders, members and associates, including La eMe associates who were also members of the Sinaloa Cartel, agree to provide protection for the Sinaloa Cartel's incarcerated members, including Joaquin "El Chapo" Guzman, in exchange for the Sinaloa Cartel supplying controlled substances from Mexico for La eMe to sell.

### VI. Roles of the Defendants

12. At various times material to this Superseding Indictment, the defendants had the

following roles in the Enterprise:

      b.      RONALDO MUDRANO AYALA, aka "OG," aka "EL PROFESSOR," aka "PROFE," ("AYALA") was an inmate at San Quentin State Prison in California. AYALA acted as a La eMe Carnal responsible for overseeing La eMe's interests in areas throughout the United States, including San Diego, California; Riverside County, California; Sacramento, California; San Francisco, California; and Seattle, Washington. AYALA collected taxes, oversaw an agreement between La eMe and the Sinaloa Cartel, offered La eMe protection to Joaquin "El Chapo" Guzman Loera, ordered the extortion of persons who failed to pay La eMe taxes, ordered the arson of property belonging to persons who failed to pay La eMe taxes, communicated La eMe directives to La eMe associates inside and outside the prison systems, and enforced discipline among La eMe associates.

      c.      ANGEL ANTHONY ESPARZA, aka "SNAPPY," aka "SNAPS," ("ESPARZA") was an inmate at San Quentin State Prison in California. ESPARZA acted as a La eMe Camarada who handled La eMe business for AYALA. ESPARZA instructed others concerning the amount of La eMe taxes which AYALA ordered to be collected on controlled substances trafficked as a result of the agreement between La eMe and the Sinaloa Cartel. ESPARZA also provided instructions concerning the payment of La eMe taxes including, but not limited to, coordinating the receipt of La eMe tax payments.

      c.      RONALD PAUL SEPULVEDA, aka "TEMPER," ("SEPULVEDA") acted as a La eMe associate outside the prison system. AYALA referred to SEPULVEDA as "our main supporter," and SEPULVEDA oversaw La eMe interests in Riverside County. AYALA and his associates communicated La eMe directives to SEPULVEDA who, in turn, oversaw their commission. Those directives involved the collection of taxes, extortionate threats, arson, and taxes collected from

persons in the entertainment industry, particularly musicians, who purported to have Sureño or La eMe affiliation.

   d. SAMUEL O. MORALES, aka "PAYASO," aka "PAYA" ("MORALES") was a member of the United Lokotes, a Sureño gang located in the Seattle, Washington area. Through his membership in a Sureño gang, loyal to La eMe, MORALES acted as a La eMe associate. MORALES carried out a La eMe directive to improve La eMe tax collection by organizing Sureño gangs in the area surrounding Seattle, Washington. MORALES also assisted La eMe in a plot to extort an individual who claimed "Mafia" affiliation in a music video posted to YouTube, and MORALES directed the arson of property belonging to the individual.

   e. ALLEN DAVID FONG, aka "FRANK," aka "FRANKIE CHINO" ("FONG") was an incarcerated La eMe associate. At all relevant times for this superseding indictment, FONG was housed at California State Prison – Solano in Solano County within the State and Eastern District of California. Additionally, FONG acted as a La eMe associate, helped to arrange controlled substance transactions, and helped to collect La eMe taxes.

   f. ALEXIS RODRIGUEZ, aka "MENACE," ("RODRIGUEZ") was a member of the United Lokotes, a Sureño gang located in the Seattle, Washington area. Through his membership in a Sureño gang, loyal to La eMe, RODRIGUEZ acted as a La eMe associate. Along with MORALES, RODRIGUEZ assisted La eMe in a plot to extort a musician, and RODRIGUEZ helped in the arson of property belonging to the individual claiming "Mafia" affiliation on YouTube who was the victim of the extortion plot.

       VII. The Racketeering Conspiracy

  13. Beginning on a date unknown but no later than on or about November 1, 2021, and continuing through the present, within the State and Eastern District of California, and elsewhere, defendants and others known and unknown to the grand jury, being employed by and associated with La eMe, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree with each other, and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the La eMe enterprise through a

pattern of racketeering activity as that term is defined in Title 18, United States Code, Section 1961(1) and 1961(5). The pattern of racketeering activity consisted of:

    a.    multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841, 843, and 846;

    b.    multiple acts indictable under 18 U.S.C. § 1951 (related to interference with commerce, robbery, or extortion);

    c.    multiple acts involving murder chargeable under Washington Revised Code, Sections 9A.32.030, 9A.08.020, 9A.28.020, 9A.28.040;

    d.    multiple acts involving extortion chargeable under California Penal Code, Sections 518, 519, 31, and 182;

    e.    multiple acts involving extortion chargeable under Washington Revised Code 9A.56.110, 9A.56.120, 9A.08.020, 9A.28.020, and 9A.28.040;

    f.    multiple acts involving arson chargeable under California Penal Code, Sections 451, 21a, 31, 182, and 664, and

    g.    multiple acts involving arson chargeable under Washington Revised Code, Sections 9A.48.030, 9A.08.020, 9A.28.020, 9A.28.040.

14. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

## Notice of Special Sentencing Factors

<u>Number 1: Conspiracy to distribute and possess with intent to distribute methamphetamine, fentanyl, and heroin:</u>

Beginning on an unknown date, but no later than on or about June 1, 2022, and continuing through on or about July 4, 2023, in the Counties of Sacramento, Kern, Solano, and Yolo, State and Eastern District of California, and elsewhere,

RONALDO MUDRANO AYALA,
ANGEL ANTHONY ESPARZA, AND
ALLEN DAVID FONG,

did conspire and agree with persons both known and unknown to the Grand Jury to knowingly and

intentionally distribute and possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, at least 1 kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and at least 400 grams of mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A).

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO: [21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, Fentanyl, and Heroin]

The Grand Jury further charges: T H A T

RONALDO MUDRANO AYALA,
ANGEL ANTHONY ESPARZA, AND
ALLEN DAVID FONG,

defendants herein, beginning on an unknown date, but no later than on or about June 1, 2022, and continuing through on or about July 4, 2023, in the Counties of Sacramento, Kern, Solano, and Yolo, State and Eastern District of California, and elsewhere, did conspire and agree with persons both known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute at least 500 grams of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, at least 1 kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and at least 400 grams of mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

//
//
//
//
//

SUPERSEDING INDICTMENT

9

1 | COUNT THREE: [21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine]

2 | The Grand Jury further charges: T H A T

RONALDO MUDRANO AYALA, AND
ANGEL ANTHONY ESPARZA,

defendants herein, on or about November 1, 2022, in the County of Kern, State and Eastern District of California, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

COUNT FOUR: [21 U.S.C. § 841(a)(1) – Distribution of Fentanyl]

The Grand Jury further charges: T H A T

RONALDO MUDRANO AYALA, AND
ANGEL ANTHONY ESPARZA,

defendants herein, on or about November 1, 2022, in the County of Kern, State and Eastern District of California, did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly known as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

COUNT FIVE: [21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine]

The Grand Jury further charges: T H A T

AND
RONALDO MUDRANO AYALA,

defendants herein, on or about November 15, 2022, in the County of Kern, State and Eastern District of California, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

//
//
//

SUPERSEDING INDICTMENT

10

COUNT SIX: [21 U.S.C. § 841(a)(1) – Distribution of Heroin]

The Grand Jury further charges: T H A T

RONALDO MUDRANO AYALA AND
ALLEN DAVID FONG

defendants herein, on or about January 19, 2023, in the County of Yolo, State and Eastern District of California, did knowingly and intentionally distribute at least 100 grams of a mixture and substance containing a detectible amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATION: [18 U.S.C. § 1963 and 21 U.S.C. § 853(a) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in Count One of this Superseding Indictment, defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ RONALDO MUDRANO AYALA, ANGEL ANTHONY ESPARZA, RONALD PAUL SEPULVEDA, SAMUEL O. MORALES, ALLEN DAVID FONG, and ALEXIS RODRIGUEZ shall forfeit to the United States pursuant to Title 18, United States Code, Sections 1963, the following property:

　　a. any interest acquired or maintained in violation of section 1962;

　　b. any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

　　c. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 1962.

2. Upon conviction of one or more of the offenses alleged in Counts Two through Six of this Superseding Indictment, defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, RONALDO MUDRANO AYALA, ANGEL ANTHONY ESPARZA, and ALLEN DAVID FONG shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), the following property:

　　a. Any real or personal property, which constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such offenses; and any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of the offenses.

　　b. A sum of money equal to the total amount of proceeds obtained as a result of the

1 | offenses, for which defendants are convicted.

2 |     3.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One
3 | through Six of this Superseding Indictment, for which defendants are convicted:
4 |         a.    cannot be located upon the exercise of due diligence;
5 |         b.    has been transferred or sold to, or deposited with, a third party;
6 |         c.    has been placed beyond the jurisdiction of the Court;
7 |         d.    has been substantially diminished in value; or
8 |         e.    has been commingled with other property which cannot be divided without
9 |             difficulty;
10 | it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Title
11 | 21, United States Code, Section 853(p), to seek forfeiture of any other property of defendants, up to the
12 | value of the property subject to forfeiture.

A TRUE BILL.

███████████

FOREPERSON

*[signature]*

PHILLIP A. TALBERT
United States Attorney