UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD PAUL SEPULVEDA, et al.,<br><br>Defendants. | No. 2:23-cr-00271-DC<br><br>ORDER DENYING THE MOTION TO DISMISS THE INDICTMENT FILED BY DEFENDANT RODRIGUEZ AND JOINED BY DEFENDANTS ESPARZA AND AYALA, AND DENYING THE MOTION TO DISMISS THE INDICTMENT FILED BY DEFENDANT FONG AND JOINED BY DEFENDANT ESPARZA<br><br>(Doc. Nos. 95, 96, 99, 102, 103) |

This matter came before the court on November 14, 2025 for a hearing on Defendants Alexis Rodriguez, Allen David Fong, Angel Anthony Esparza, and Ronaldo Mudrano Ayala's ("Moving Defendants") motions to dismiss the indictment with prejudice under Federal Rule of Criminal Procedure 12(b)(1) due to violation of his Sixth Amendment right to counsel, specifically due to the government's failure to adequately compensate his appointed counsel. (Doc. Nos. 95, 96, 99, 102, 103.) For the reasons explained below, Defendants' motions will be denied.

**BACKGROUND**

On December 19, 2024, the Moving Defendants, along with co-defendants Ronald Paul Sepulveda, Raudel Gonzalo Meza Quinonez, and Samuel O. Morales, were indicted on one count

1

of conspiracy to participate in a racketeering enterprise (18 U.S.C. 1962(d)) ("RICO"). (Doc. No. 8.) In addition to that Count One RICO charge, the operative indictment also charges the following: Count Two against Defendants Quinonez, Ayala, Esparza, and Fong for conspiracy to distribute and possess with intent to distribute methamphetamine, fentanyl, and heroin (21 U.S.C. §§ 846, 841(a)(1)); Count Three against Defendants Quinonez, Ayala, Esparza for distribution of methamphetamine (21 U.S.C. § 841(a)(1)); Count Four against Defendants Quinonez, Ayala, Esparza for distribution of fentanyl (21 U.S.C. § 841(a)(1)); Count Five against Defendants Quinonez and Ayala for distribution of methamphetamine (21 U.S.C. § 841(a)(1)); and Count Six against Defendants Ayala and Fong for distribution of heroin (21 U.S.C. § 841(a)(1)).

This case is in pretrial proceedings with a status conference currently set for January 16, 2026, with time excluded through that date. (Doc. No. 94.) The court has not set a trial date for this case.

During their initial appearances, the court appointed counsel for each of the Moving Defendants pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. (Doc. Nos. 45, 48, 56, 78.) Specifically, on January 23, 2025, Attorney Christopher Richard Cosca was appointed to represent Defendant Esparza, and Attorney David D. Fischer was appointed to represent Defendant Fong. (Doc. Nos. 45, 48.) On January 27, 2025, Attorney Todd David Leras was appointed to represent Defendant Ayala. (Doc. No. 56.) On February 28, 2025, Attorney Dina Lee Santos was appointed to represent Defendant Rodriguez. (Doc. No. 78.)

The CJA provides "[a]ny attorney appointed pursuant to this section, . . . shall, at the conclusion of the representation or any segment thereof, be compensated" at specific hourly rates, by submitting vouchers to the Judiciary.[1] 18 U.S.C. § 3006A(d)(1). The Judiciary acknowledged that funding for CJA panel attorneys for fiscal year 2025 was depleted around July 3, 2025. *See* CJA Panel Attorney Funds Information FY 2025, available at https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-informationfy-2025 (updated Oct. 6, 2025). The Judiciary also confirmed that "[p]anel attorney payments will resume when a

---

[1] "Representation under [the CJA] shall include counsel and investigative, expert, and other services necessary for adequate representation." 18 U.S.C. § 3006A(a).

2

1  continuing resolution is passed by Congress and signed into law by the President." *See id.*

2  Since early July 2025 through the November 14 hearing, Attorneys Cosca, Fischer, Leras,
3  and Santos have not received compensation for the cases in which the court appointed them as
4  CJA counsel to represent indigent criminal defendants, including this case. (Doc. Nos. 95 at 2; 99
5  at 5; 102 at 4; 103 at 1.) Nevertheless, defense counsel continued their work in preparing their
6  respective client's defense. (*Id.*) Indeed, at the status conference held on August 22, 2025, defense
7  counsel explained that they were having challenges reviewing discovery with their clients based
8  on where they were housed and the complexity of this case, and they needed substantial
9  additional time for investigation and preparation. (Doc. No. 94.) Based on those representations,
10 the court granted the parties' joint request to set this case for a further status conference on
11 January 16, 2026. (*Id.*) With the exception of Attorney Fischer on behalf of Defendant Fong, none
12 of the other Moving Defendants' counsel raised any concerns at that August 22, 2025 status
13 conference regarding the lapse in CJA funding. In particular, Attorney Fischer raised concerns
14 about the privacy of recordings of telephone calls and felt he needed to visit Defendant Fong in
15 person, but there was no CJA money to fund to travel to Los Angeles, where Defendant Fong was
16 housed. However, these concerns were raised for the purpose of explaining why additional time
17 was needed and why setting a further status conference several months out was appropriate; no
18 arguments were made regarding Defendant Fong's Sixth Amendment rights being violated by the
19 lapse in CJA funding. Indeed, prior to the government shutdown, none of the Moving Defendants
20 filed any motions asserting the lapse in CJA funding prevented their counsel from continuing
21 representation or otherwise constituted a violation of their constitutional rights.

22 On October 4, 2025, Defendant Rodriguez filed his pending motion to dismiss the
23 indictment, arguing that the non-payment situation has worsened due to Congress's failure to pass
24 a budget, which led to a government shutdown that "result[ed] in a continued funding lapse that
25 began on October 1, 2025, with no end in sight." (Doc. No. 95 at 2.) Defendant Rodriguez argues
26 that "this situation has created an untenable conflict between counsel's professional obligations
27 and their basic economic survival." (*Id.*) Defendant Rodriguez asserts that his Sixth Amendment
28 right to counsel has been violated due to "the prolonged non-payment of appointed counsel." (*Id.*

1  at 3.) Defendant Rodriguez further asserts that "the promise of *Gideon* cannot be fulfilled when
2  counsel is appointed but left unpaid indefinitely." (*Id.*)

3  On October 14, 2025, Defendant Ayala filed a joinder in Defendant Rodriguez's motion,
4  also asserting a Sixth Amendment violation and requesting dismissal of the indictment, or in the
5  alternative, a stay of these "proceedings until such time as CJA defense funds are paid." (Doc.
6  No. 99 at 8.)

7  On October 30, 2025, Defendant Fong filed his pending motion to dismiss the indictment,
8  similarly arguing "[t]he prolonged non-payment of appointed counsel . . . violates Defendant's
9  constitutional right to effective assistance of counsel and renders continued prosecution
10 fundamentally unfair." (Doc. No. 102 at 1.) Defendant Fong also argues "this situation has
11 created an untenable conflict between counsel's professional obligations and basic economic
12 survival." (Doc. No. 102 at 6.)

13 Defendant Esparza filed joinders in both Defendant Rodriguez's and Defendant Fong's
14 motions, also asserting a Sixth Amendment violation and noting that his counsel must pay out of
15 pocket for travel costs to visit him where he is housed in Pahrump, Nevada. (Doc. Nos. 96, 103.)

16 The government filed oppositions to the pending motions and joinders. (Doc. Nos. 101,
17 106.) Defendants Rodriguez and Ayala filed a joint reply on November 7, 2025. (Doc. No. 104.)

18 Less than a week later, on November 12, 2025, Congress passed and the President signed
19 a continuing resolution that ended the federal government shutdown and provided funds for the
20 Judiciary to make payments to CJA attorneys both for the backlog of vouchers that had already
21 been submitted and for ongoing defense operations. The court understands from counsel's
22 representations at the November 14, 2025 hearing that backlog payments were expected to be
23 made during the last two weeks of November 2025, and the parties have not since alerted the
24 court that those payments were not completed as expected.

25 **LEGAL STANDARD**

26 Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion
27 any defense, objection, or request that the court can determine without a trial on the merits." Fed.
28 R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as

4

former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation omitted).

However, a district court may also dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citing *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). "Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available," *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991), and the defendant suffers "substantial prejudice," *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (citation omitted).

## ANALYSIS

**A.    Sixth Amendment Right to Counsel**

The Sixth Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The United States Supreme Court has construed the Sixth Amendment right to the assistance of counsel "to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963). "This right has been accorded, . . . 'not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate." *Micken*, 535 U.S. at 166 (citing *Strickland v. Washington*, 466

U.S. 668, 685–86 (1984)).

The Supreme Court has long recognized "that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). The Supreme Court further acknowledged that while the government need not "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," "fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Id.* (quoting *Ross v. Moffitt,* 417 U.S. 600, 612 (1974)). In implementing this principle, the Supreme Court emphasized that the focus is on ensuring the "basic tools of an adequate defense" are "provided to those defendants who cannot afford to pay for them." *Ake*, 470 U.S. at 77 (citation omitted).

Under the Sixth Amendment, defendants have a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *Lockhart v. Terhune*, 250 F.3d 1223, 1226 (9th Cir. 2001) ("A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty."). However, the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see also McGill v. Shinn*, 16 F.4th 666, 690 (9th Cir. 2021) (noting that "[n]othing in the Sixth Amendment suggests that an accused is entitled to 'rapport' with his attorney").

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Notably, the standard is not one of perfect performance, nor a standard that requires the absolute best from the defendant's attorney. Indeed, "an attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel." *United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) ("There is no Ninth Circuit rule that the violation of a rule of ethics or professional conduct by counsel before trial constitutes ineffective assistance of counsel *per se*.").

"To establish ineffective assistance of counsel, [the defendant] must bear the burden of

6

proving that defense counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced him." *United States v. Jackson*, 98 F. App'x 639, 639–40 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 685). "Prejudice is shown when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Bert*, 387 F. App'x 757, 758 (9th Cir. 2010) (quoting *Strickland*, 466 U.S. at 694)).

Though claims of ineffective assistance of counsel are most often raised by defendants in post-judgment habeas proceedings, district courts have discretion to hear pre-judgment ineffective assistance of counsel claims. *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013) (explaining that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding"). A defendant who feels that they are not being provided effective assistance of counsel may raise that issue with the court in a motion for the appointment of new counsel. *See United States v. George*, 85 F.3d 1433, 1438 (9th Cir. 1996) (a district court's denial of an indigent defendant's motion to substitute new counsel is reviewed for abuse of discretion). Moreover, an appointed lawyer who feels that they are no longer able to provide effective assistance of counsel must file a motion to be relieved as counsel and to have new counsel appointed for the defendant. *United States v. Franklin*, 650 F. App'x 391, 393 (9th Cir. 2016) (finding the district court did not err in declining to grant defendant's fourth motion for new counsel after having granted the prior three attorneys' motions to withdraw). Indeed, Rule 1.16(a) of the California Rules of Professional Conduct outlines several grounds upon which an attorney "*shall* withdraw from the representation of a client." Cal. R. Prof. Conduct 1.16(a)(4) (emphasis added).

**B.     The Moving Defendants' Motions to Dismiss the Indictment**

Here, the Moving Defendants all assert that their Sixth Amendment right to counsel has been violated due to the prolonged non-payment of appointed counsel. However, as noted above, defense counsel knew that CJA funding had stopped in early July 2025 and payments were not expected to resume until October 2025, and they represented to the court at the August 22, 2025

7

status conference that they were continuing to review discovery and visit their clients, despite challenges posed by the locations where their clients were housed. That is, counsel knew they would not receive payments until October 2025, and they continued representing their clients and doing the best they could under the circumstances, as described below.[2]

### 1. Defendant Rodriguez

As for Defendant Rodrguez, his motion to dismiss was filed just a few days after the government shutdown began on October 1, 2025. (Doc. No. 95.) But, as emphasized in his motion, "[d]espite the lack of compensation, [his] Counsel, investigator, paralegal, and expert have continued to represent the Defendant to prevent immediate prejudice." (Doc. No. 95 at 2.) Defendant Rodriguez's motion does not identify any "basic tools of an adequate defense," *Ake*, 470 U.S. at 77, that he has not been provided, nor articulate any basis upon which to find his counsel's performance to be deficient. At the November 14, 2025 hearing, Attorney Santos confirmed that she and her support service providers have continued working on this case, even after the government shutdown, but they are not able to give their best to Defendant Rodriguez. As an example, Attorney Santos explained that some of the events at issue in this case occurred in Seattle, Washington, and although she has made some investigatory trips to Seattle, she has not been able to perform all of the investigatory work that she otherwise would have performed. However, given the end of the Government shutdown on November 12, 2025, and the restoration of CJA payments in the latter half of November 2025, Defendant Rogriguez has ultimately experienced a brief delay in his counsel being able to complete her investigatory work in Seattle.

Defendant Rodriguez's pending motion also asserts that "[n]o attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandate." (Doc. No. 95 at 3.) But the question before the court is not whether Attorney Santos can be expected to continue representing Defendant

---

[2] The court acknowledges the extreme hardship that the lapse in funding placed on CJA panel attorneys, many of whom did not receive any CJA payments since late-Spring and early-Summer 2025, well before the government shutdown exacerbated an already untenable situation. The court fully recognizes the extraordinary undertaking by CJA attorneys during this unprecedented time, though this motion necessarily focuses on the individual circumstances of each of the Moving Defendants and the assistance of counsel they have received in this case.

1  Rodriguez indefinitely without adequate compensation. The question is whether—despite the
2  lapse in funding—defense counsel has nonetheless provided effective assistance of counsel to
3  Defendant Rodriguez. As discussed above, the record in this case indicates that she has done so.
4  Thus, Defendant Rodriguez has not met his burden of showing his counsel's performance fell
5  below an objective standard of reasonableness and that such performance prejudiced him in this
6  case. Accordingly, the court finds Attorney Santos has provided effective assistance of counsel to
7  date.

8  Further, because the government shutdown ended a few days before the hearing and in re-
9  opening the government Congress provided funds for the Judiciary to make payments to CJA
10 attorneys, counsel acknowledged that circumstances have changed and the lack of compensation
11 was no longer indefinite. Nevertheless, counsel argued that dismissal of the indictment was the
12 only appropriate remedy for the purported Sixth Amendment violation.[3]

13 However, for all of the reasons explained above, the court finds that Defendant Rodriguez
14 has not shown a Sixth Amendment violation, and on that basis, the court will deny Defendant
15 Rodriguez's motion to dismiss the indictment.

16     2.    <u>Defendant Ayala</u>

17 As for Defendant Ayala, who joined in Defendant Rodriguez's motion to dismiss on
18 October 14, 2025, his counsel has likewise represented to the court that he has continued working
19 on this case despite the lack of CJA payments. (Doc. No. 99 at 4–5.) Like Defendant Rodriguez's
20 motion, Defendant Ayala's joinder does not identify any "basic tools of an adequate defense,"
21 *Ake*, 470 U.S. at 77, that he has not been provided, nor articulate any basis upon which to find his
22 counsel's performance to be deficient.

23 At the November 14, 2025 hearing, Attorney Leras confirmed that he continued to do as

---

[3] In opposing Defendant Rodriguez's motion, the government argues that "to the extent that Defendants' counsel is unable to perform their ethical duties due to the lapse of payment, the remedy is not dismissal of the Indictment and, instead, it is to file a motion to withdraw." (Doc. No. 101 at 4.) Notably, Attorney Santos has not filed a motion to withdraw in this case. Given that Attorney Santos has provided effective assistance to date and the lapse in funding that may have otherwise prevented her from continuing to do so has been resolved, the court need not address this issue further.

much as he could to keep advancing Defendant Ayala's case, including making the approximately six-hour round trip visit to review discovery with Defendant Ayala where he is housed in FCI Mendota. Attorney Leras expressed that under normal circumstances he would stay overnight in Fresno to facilitate successive days visiting Defendant Ayala, but due to the budget constraints, he had been carpooling to FCI Mendota with his investigator so they could make the trip in one day, and he could work while the investigator drove the car. Attorney Leras also explained that he has been unable to hire a paralegal to work on this case due to the lack of funds, and he has not sought to hire translators or transcribers to transcribe the recordings at issue in this case either, due to the lack of funds. However, given the end of the Government shutdown on November 12, 2025, and the restoration of CJA payments in the latter half of November 2025, Defendant Ayala has ultimately experienced a brief delay in his counsel being able to engage the support services of a paralegal and transcriber, and to travel more efficiently to visit Defendant Ayala. As with Defendant Rodriguez, the question before the court is not whether Attorney Leras can be expected to continue representing Defendant Ayala indefinitely without adequate compensation. The question is whether—despite the lapse in funding—defense counsel has nonetheless provided effective assistance of counsel to Defendant Ayala. As discussed above, the record in this case indicates that he has done so. Thus, Defendant Rodriguez has not met his burden of showing his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced him in this case. Accordingly, the court finds Attorney Leras has provided effective assistance of counsel to date.

Further, because the government shutdown ended a few days before the hearing and in re-opening the government Congress provided funds for the Judiciary to make payments to CJA attorneys, counsel acknowledged that circumstances have changed and the lack of compensation was no longer indefinite. Nevertheless, counsel argued that dismissal of the indictment was the only appropriate remedy for the purported Sixth Amendment violation.[4]

---

[4] In opposing Defendant Ayala's joinder in Defendant Rodriguez's motion, the government argues that "to the extent that Defendants' counsel is unable to perform their ethical duties due to the lapse of payment, the remedy is not dismissal of the Indictment and, instead, it is to file a motion to withdraw." (Doc. No. 101 at 4.) Attorney Leras has not filed a motion to withdraw in

However, for all of the reasons explained above, the court finds that Defendant Ayala has not shown a Sixth Amendment violation, and on that basis, the court will deny Defendant Ayala's joinder in Defendant Rodriguez's motion to dismiss the indictment.

### 3. Defendant Fong

As for Defendant Fong, his motion similarly emphasizes that "[d]espite the lack of compensation, [his] counsel has continued to represent Defendant Fong to prevent immediate prejudice to his constitutional rights. (Doc. No. 102 at 6.) Defendant Fong's motion also emphasizes that due to the lapse in CJA funding and the fact that Defendant Fong is housed 800 miles away in Los Angeles, California, Attorney Fischer is unable to afford traveling to meet with Defendant Fong in person as regularly as he ordinarily would visit, usually monthly. The court appreciates that Defendant Fong's housing in Los Angeles and the lack of funds for travel have posed significant challenges to Attorney Fischer's ability to meet with Defendant Fong in person. Though at the August 22, 2025 status conference, Attorney Fischer raised these same concerns as a basis for continuing the status conference to January 2026, explaining that more time was needed to prepare due to these logistical challenges. Attorney Fischer did not raise concerns regarding Defendant Fong being deprived effective assistance of counsel. Moreover, even if at that time counsel was relying on the shared expectation that funding would resume in October 2025, at most he expected to be able to resume his regularly monthly visits in October 2025. Given that the government shutdown ended on November 12, 2025 and CJA payments were made in the latter half of November 2025, Defendant Fong ultimately experienced a brief delay— a few missed monthly in-person visits—in meeting with his counsel face-to-face, as opposed to by telephone and Zoom calls.

Defendant Fong's motion also asserts that "[n]o attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandate." (Doc. No. 102 at 9–10.) But, as noted above,

---

this case. Given that Attorney Leras has provided effective assistance to date and the lapse in funding that may have otherwise prevented him from continuing to do so has been resolved, the court need not address this issue further.

the question before the court is not whether Attorney Fischer can be expected to continue representing Defendant Fong indefinitely without adequate compensation. The question is whether—despite the lapse in funding—defense counsel has nonetheless provided effective assistance of counsel to Defendant Fong. As discussed above, the record in this case indicates that he has done so. Thus, Defendant Fong has not met his burden of showing his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced him in this case. Accordingly, the court finds Attorney Fischer has provided effective assistance of counsel to date.

Further, because the government shutdown ended a few days before the hearing and in re-opening the government Congress provided funds for the Judiciary to make payments to CJA attorneys, counsel acknowledged that circumstances have changed and the lack of compensation was no longer indefinite. Nevertheless, counsel argued that dismissal of the indictment was the only appropriate remedy for the purported Sixth Amendment violation.

However, for all of the reasons explained above, the court finds that Defendant Fong has not shown a Sixth Amendment violation, and on that basis, the court will deny Defendant Fong's motion to dismiss the indictment.[5]

---

[5] On November 12, 2025, Defendant Fong filed a notice of supplemental authority. (Doc. No. 107.) The court recognizes that other judges in this District have addressed similar motions to dismiss an indictment due to the lapse in CJA funding, and some have found Sixth Amendment violations, *see United States v. Ortiz*, No. 2:24-cr-00302-JAM, 2025 WL 3157821 (E.D. Cal. Nov. 12, 2025); *United States v. Evanovich*, No. 2:24-cr-00079-DJC, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025), and others have not found a Sixth Amendment violation, *see United States v. Vasquez*, No. 2:25-cr-135-WBS, 2025 WL 2961906, at *4 (E.D. Cal. Oct. 20, 2025) ("Vasquez's argument for a conflict of interest might be more persuasive had his counsel not accepted appointment after she was on notice that funding for CJA-appointed counsel had already been exhausted. To date, Vasquez's counsel has not filed a motion to withdraw, as would be proper in the event of a *genuine* conflict of interest."). The court finds the decisions in *Ortiz* and *Evanovich* to be distinguishable, as both of those defendants had upcoming trial dates and counsel were unable to adequately prepare for trial due to the lapse in funding. *See Ortiz*, 2025 WL 3157821, at *1 ("Trial is set in this matter for January 26, 2026, a mere ten weeks from now. To expect defense counsel to properly prepare for trial, while consistently denying her the tools to do so is, in this Court's view, not only unconscionable but also unconstitutional."); *see Evanovich*, 2025 WL 3208308, at *1 ("To expect Defendant's Counsel to adequately prepare for a trial currently set for February 2026 while consistently denying him the tools to do so would be, in this Court's view, not only unconscionable, but also unconstitutional."). In contrast, a trial date has not been set in this case.

      4.      Defendant Esparza

As for Defendant Esparza, who filed joinders in both Defendant Rodriguez's and Defendant Fong's motion to dismiss, his counsel has likewise continued working on this case despite the lack of CJA payments. (Doc. Nos. 96, 103.) As with Defendant Rodriguez's motion, Defendant Ayala's joinder does not identify any "basic tools of an adequate defense," *Ake*, 470 U.S. at 77, that he has not been provided, nor articulate any basis upon which to find his counsel's performance to be deficient. While Attorney Cosca emphasizes that the travel costs to visit Defendant Esparza are being paid out-of-pocket, Attorney Cosca has not indicated that he has been unable to bear those costs and make do under the circumstances. (Doc. Nos. 96, 103.) Moreover, as noted above, given the end of the Government shutdown on November 12, 2025 and the restoration of CJA payments in the latter half of November 2025, Attorney Cosca is no longer bearing those travel costs out-of-pocket without reimbursement. As discussed above, the record in this case indicates that Attorney Cosca has continued providing effective assistance of counsel to Defendant Esparza despite the lapse in funding. Thus, Defendant Esparza has not met his burden of showing his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced him in this case.

Accordingly, the court finds Attorney Cosca has provided effective assistance of counsel to date and Defendant Esparza has not shown a Sixth Amendment violation. On that basis, the court will deny Defendant Esparza's joinders in Defendants Rodriguez's and Fong's motion to dismiss the indictment.

**CONCLUSION**

For the reasons explained above,

1. Defendant Rodriguez's motion to dismiss the indictment (Doc. No. 95) is DENIED;
2. Defendant Ayala's joinder in Defendant Rodriguez's motion to dismiss the indictment (Doc. No. 99) is DENIED;
3. Defendant Fong's motion to dismiss the indictment (Doc. No. 102) is DENIED; and

13

4. Defendant Esparza's joinders in Defendant Rodriguez's and Defendant Fong's motion to dismiss the indictment (Doc. No. 96, 103) are DENIED.

IT IS SO ORDERED.

Dated: __**December 15, 2025**__    _____
　　　　　　　　　　　　　　　　　　Dena Coggins
　　　　　　　　　　　　　　　　　　United States District Judge